IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROWLO, LLC, et al., <br><br> Defendants. | CIVIL ACTION FILE NO. 1:25-CV-2481-TWT |

**OPINION AND ORDER**

This is a breach of contract case. It is before the Court on Defendants Rowlo, LLC ("Wuffes") and Samuel Venning's Motion to Dismiss [Doc. 14]. For the reasons stated below, the Defendants' Motion to Dismiss [Doc. 14] is DENIED.

## I.   Background[1]

This case arises out of an alleged breach of a settlement agreement. Plaintiffs Nutramax Laboratories, Inc. and Nutramax Veterinary Sciences, Inc. research, develop, and sell a wide variety of animal health products. (Compl. ¶ 10 [Doc. 1]). Two of these products are named Cosequin and Dasuquin (collectively, the "Supplements"), which are joint health

---

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

supplements in the companion animal market. (*Id.* ¶ 13). The Supplements have been registered with the U.S. Patent and Trademark Office, granting the Plaintiffs the exclusive right to use its trademarks in commerce in the United States, and have generated significant sales for the Plaintiffs via online retailers, brick-and-mortal retail establishments, and veterinarians. (*Id.* ¶¶ 13-15).

Defendant Wuffes is a competitor to the Plaintiffs. (*Id.* ¶ 22). Defendant Wuffes "advertises, promotes, offers for sale, and sells dietary and nutritional supplements for animals under the WUFFES trademark." (*Id.* ¶ 5). Specifically, Defendant Wuffes markets and sells animal supplements that compete directly with the Plaintiffs' products, including the Supplements. (*Id.* ¶ 22). Defendant Venning is one of the founders of Wuffes and is believed to be the Chief Executive Officer of the entity. (*Id.* ¶ 6). The Plaintiffs believe that Venning personally controls Wuffes's advertising and promotional activities. (*Id.* ¶ 23).

In 2023, the Plaintiffs filed a complaint against the Defendants, alleging claims of common law unfair competition, defamation, and defamation per se within the District of Wyoming (the "Previous Litigation").[2] (*Id.* ¶ 17). During the Previous Litigation, the parties entered into a settlement agreement to resolve all claims set forth in the Plaintiffs' complaint (the "Settlement

---

[2] *Nutramax Laboratories, Inc. et al v. Rowlo, LLC et al*, 1:23-cv-00085-SAH.

Agreement"). (*Id.* ¶ 19). In the Settlement Agreement, the Defendants explicitly agreed that they would:

> [N]ot reference or use, or cause to be referenced or used, in any manner, the words Nutramax, Nutramax Laboratories®, Dasuquin®, Cosequin®, or any of Nutramax's various other registered or common law trademarks (including Nutramax's trade dress and copyright-protected packaging designs) that exist now or may exist in the future in any commercial advertising or promotion, including social media posts and comments (the "Provision").

(*Id.* ¶ 20). After entering into the Settlement Agreement, the parties filed a stipulated dismissal of the Previous Litigation with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (*Id.* ¶ 21).

The dispute between the parties does not end there. After the conclusion of the Previous Litigation, the Defendants started referencing or using the Plaintiffs' registered and common law trademarks, including those associated with the Supplements, as keywords on Amazon.com and other online retailers to promote their products. (*Id.* ¶ 24). Specifically, the Defendants used words associated with the Plaintiffs' trademarks as keywords in the advertising or promotion of their own products by causing the Defendants' products to appear at the top of any search for the Plaintiffs' products (including for the Supplements) as a "sponsored" result or as a banner advertisement when using Amazon.com or other online retailers. (*Id.* ¶ 25).

Believing this to be a breach of the Settlement Agreement, the Plaintiffs sent the Defendants notice of their intent to file suit unless the Defendants ceased their conduct. (*Id.* ¶ 28). The Defendants refused, and the Plaintiffs

subsequently filed this action pursuant to the choice-of-law and jurisdiction provisions within the Settlement Agreement. (*Id.* ¶¶ 8-9, 28). In the Complaint, the Plaintiffs request relief from the Court for two counts, one for breach of contract and one for specific performance under Georgia law. (*See id.* ¶ 30-48). The Defendants now move to dismiss the Complaint in its entirety.

## II.   Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim; however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the Court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon

which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

The Defendants argue that the Plaintiffs fail to state a claim for both counts present within their Complaint. (*See* Br. in Supp. of Defs.' Mot. to Dismiss, at 8 [Doc. 14]). Under Georgia law, settlement agreements are interpreted like contracts. *In the Matter of High-Top Holdings, Inc.*, 564 B.R. 784, 796 (Bankr. N.D. Ga. 2017) (citing *Safe Shield Workwear, LLC v. Shubee, Inc.*, 286 Ga. App. 498, 501 (2009)). Specific performance may be granted in a breach of contract case when "monetary damages recoverable at law would not constitute adequate compensation for another parties' nonperformance." *Sexton v. Sewell*, 351 Ga. App. 273, 275 (2019). Accordingly, as both parties agree, the Plaintiffs' specific performance count rises and falls with the breach of contract count under Georgia law.

Turning then to the Plaintiffs' other count against the Defendants, the elements of a breach of contract claim are "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Bazemore v. U.S. Bank Nat'l Ass'n*, 363 Ga. App. 723, 731 (2022) (citation omitted). The Defendants argue only against the breach element and do not contest the other elements. (*See* Br. in Supp. of Defs.' Mot. to Dismiss,

at 8). Specifically, the Defendants contend that "keyword bidding"[3] is not prohibited by the plain language of the Settlement Agreement. (*See id.* at 9-12). Further, the Defendants argue that even if the Court declines to dismiss the Complaint, Defendant Venning must be dismissed because the Plaintiff failed to allege that Venning personally breached the Settlement Agreement. (*See id.* at 19-22). In addressing this dispute, the Court will first interpret the Settlement Agreement before determining whether it applies to "keyword bidding." If necessary, the Court will then determine whether to dismiss Defendant Venning.

A. Interpretation of the Settlement Agreement

When interpreting a contract under Georgia law, "[t]he issues of contract construction and enforceability are generally questions of law for a court to resolve." *High-Top Holdings, Inc.*, 564 B.R. at 796 (quoting *Precision Planning, Inc. v. Richmark Cmtys., Inc.*, 298 Ga. App. 78, 78 (2009) (quotation marks omitted) (brackets in original)). "The cardinal rule of construction is to determine the intention of the parties." *Id.* (quoting *Safe Shield Workwear*, 296 Ga. App. at 501 (2009) (quotation marks omitted)). "However, if a contract's terms are clear and unambiguous, those terms are the sole evidence of intent

---

[3] As explained by the Defendants, "keyword bidding" involves using "keywords to link users seeking a particular product with advertisements tailored to that user's search, such that certain products appear more prominently in 'sponsored' search results." As applied to this case, the "keyword bidding" at issue is the Defendants' use of the names of the Supplements to promote its own products through websites like amazon.com. (*See* Br. in Supp. of Defs.' Mot. to Dismiss, at 2).

6

that a court may consider." *Id.* (citing *Barnett v. Platz*, 261 Ga. App. 51, 53 (2003)). "Ambiguity is defined as duplicity; indistinctness; an uncertainty of meaning or expression used in a written instrument, and . . . also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations." *Cahill v. United States*, 303 Ga. 148, 150 (2018) (citation modified).

The Defendants and the Plaintiffs interpret the Settlement Agreement differently. The Defendants argue that the Provision unambiguously excludes "keyword bidding" from prohibited conduct because of the limiting phrase, "in any commercial advertising or promotion." (*See* Br. in Supp. of Defs.' Mot. to Dismiss, at 9-10). Furthermore, the Defendants argue that the Settlement Agreement does not even mention the term "keyword bidding" or related words in its prohibition. (*Id.* at 9). The Plaintiffs disagree, arguing that the use of keywords (namely, the trademarks of the Plaintiffs) that link users to the Defendants' advertisements fit the prohibition within the Provision explicitly. (*See* Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss, at 7-8 [Doc. 19]). They direct the Court's attention to an earlier part of the Provision that states that the Defendants will not "reference or use" the Plaintiffs' trademarks "in any manner" to argue that the Provision operates broadly to prohibit the Defendants' conduct. (*Id.* at 7-8).

7

On this preliminary issue, the Court is persuaded more by the Defendants' construction of the Provision. "[I]t is a well-established rule of contract construction that a court should avoid an interpretation of a contract which renders any of its terms meaningless or mere surplusage." *Garrett v. Southern Health Corp. of Ellijay, Inc.*, 320 Ga. App. 176, 183 (2013). While the Plaintiffs' interpretation does not render parts of the Provision mere surplusage, their interpretation reduces the significance of a clear, limiting phrase present within the contract. It is true that the Provision prohibits the Defendants from referencing or using the Plaintiffs' trademarks "in any manner," but the Defendants are only prohibited from doing so when the conduct involves "commercial advertising or promotion." (*See* Settlement Agreement § 2(a)(i) [Doc. 12]).[4] While the Plaintiffs attempt to shy away from the latter phrase and focus on the broad phrases within the Provision, the latter phrase still significantly limits the world of conduct of which the Defendants could be found in breach of the Settlement Agreement.

---

[4] When ruling on a motion to dismiss, the court may not consider any evidence beyond the face of the complaint and any additional documents attached thereto. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). However, this rule is not absolute. An exception exists when (1) the defendant attaches the document to its motion to dismiss, (2) the document is central to the plaintiff's claim, and (3) the document's authenticity is not challenged. *Jackson v. City of Atlanta, Ga.*, 97 F.4th 1343, 1350 (11th Cir. 2024). Here, the Settlement Agreement is the basis of the Plaintiffs' breach of contract claim and is referred to extensively through the Complaint. Furthermore, the Defendants have attached the document to their Motion to Dismiss and neither party disputes the contents or authenticity of the Settlement Agreement. Therefore, the Court will consider the Settlement Agreement in this Motion to Dismiss.

The question, then, is what the phrase "commercial advertising or promotion" means for the purposes of the Settlement Agreement. The Defendants argue that the phrase must be interpreted in the context of the Previous Litigation. (*See* Br. in Supp. of Defs.' Mot. to Dismiss, at 11-19). There, the Plaintiffs' complaint sought relief for certain "false and misleading" advertisements produced by the Defendants where consumers could see and be confused by the advertisements on the Defendants' website and other places online. (*Id.* at 11; *see* Br. in Supp. of Defs.' Mot. to Dismiss, Ex. 1 ("Previous Litigation Complaint") ¶¶ 1, 39, 41, 49, 64-65, 92, 118 [Doc. 14-1]). In addition, the Defendants argue that the phrase "commercial advertising or promotion" should be interpreted in conjunction with the Lanham Act (15 U.S.C. § 1051 et seq.) because the Plaintiffs brought such statutory claims against the Defendants in the Previous Litigation. (Br. in Supp. of Defs.' Mot. to Dismiss, at 12; *see* Previous Litigation Complaint ¶¶ 126-43).

The Plaintiffs, on the other hand, argue that a Lanham Act-centric interpretation of the Settlement Agreement is erroneous because the language of the Provision is broader than the conduct addressed within the statute. (*See* Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 10). Additionally, the Plaintiffs argue that if the parties intended for the language in the Settlement Agreement to be coextensive with the Lanham Act, such a provision would have been present within the Settlement Agreement. (*See id.* at 12).

9

The Defendants' argument here is intriguing. On one hand, the Defendants argue that the language of the Settlement Agreement is unambiguous but then urge the Court to consider extrinsic evidence regarding the context in which the Settlement Agreement was executed. Indeed, if the language of the Settlement Agreement is unambiguous, it should be clear from the plain language of the Provision or the Settlement Agreement as a whole that the language should be interpreted with context from the Previous Litigation or the Lanham Act. However, the only language referencing the Previous Litigation or the Lanham Act within the Settlement Agreement arises from two recitals in the introductory section expressing the parties' intent to resolve the Previous Litigation. (*See* Settlement Agreement, at 1-2). And recitals, while effective at expressing the intent of the parties, are not binding terms within a contract under Georgia law. *See Wade v. Ballard*, 69 Ga. App. 669, 669 (1943).

However, no matter whether the Court finds that the Provision is unambiguous or ambiguous, the Defendants' arguments are still unpersuasive. The two recital provisions simply state that the Plaintiffs filed a complaint based on false advertisements under the Lanham Act in the District of Wyoming and further expressed the parties' intent to resolve the lawsuit by entering into the Settlement Agreement. (*See* Settlement Agreement, at 1-2). Nowhere does it explicitly state that the interpretation of the Settlement

Agreement would be constrained by the Previous Litigation or the Lanham Act.

Such an intent cannot be implicitly gleaned from the Settlement Agreement either. Although the Defendants argue that the use of the phrase, "commercial advertising or promotion," is a term of art specific to the Lanham Act, the Plaintiffs are correct to point out that there are key differences between the Lanham Act and the Provision. The first distinction arises out of the purpose of the Lanham Act and the Provision. The Lanham Act provides a civil cause of action for any person who suffers damages from the use of their product in false or misleading advertising. *See* 15 U.S.C. § 1125(a)(1). However, the Provision and the Settlement Agreement at-large imposes a broader requirement, prohibiting the Defendants from using the Plaintiffs' trademarks in *any* commercial advertisements or promotion run by the Defendants. (*See* Settlement Agreement § 2(a)(i)). While the Settlement Agreement was made to prevent the Defendants from violating the Lanham Act, the Provision operates to effect a broader change than to remedy any potential violation of the Lanham Act.

The second key difference between the Lanham Act and the Provision arises out of the broad nature of the contract's text. The Defendants' attempt to apply the Lanham Act's definition of "commercial advertising or promotion" fails because the case law surrounding the definition and application of the term applies in a different context. While the Lanham Act simply prohibits the

11

"use" of another's trademarks in "commercial advertising or promotion," the Settlement Agreement prohibits the "reference or use" of the Plaintiffs' trademarks. *See* 15 U.S.C. § 1125(a)(1); (Settlement Agreement § 2(a)(i)). The broader scope of the Settlement Agreement operates in a different context than the Lanham Act, rendering case law on the Lanham Act inapplicable to determine the meaning of the term within the Settlement Agreement. These two key differences lead the Court to conclude that it would be erroneous to conclude that the Settlement Agreement implicitly references the Lanham Act's definition of "commercial advertising or promotion" to the Provision.

Then, how should the Court interpret the phrase-at-issue? The Court looks to the default rule under Georgia law. Under Georgia law, "words in a contract generally bear their usual and common meaning." *Smith v. Smith*, 369 Ga. App. 213, 222 (2023) (citation omitted). A court may understand a word or phrase's "usual and common meaning" by looking to "common dictionaries." *Id.* (citation omitted). Doing so, the term "commercial" is defined as "occupied with or engaged in commerce," "related to or dealing with commerce," or "used in or characteristic of commerce." *Commercial*, Merriam-Webster's Unabridged Dictionary.  The term "advertising" is defined as "the action of calling something to the attention of the public especially by paid announcements." *Advertising*, Merriam-Webster, https://www.merriam-webster.com/dictionary/advertising (last visited Feb. 20, 2026). Finally, the term "promotion" is defined as the "act of furthering the growth or development

12

of something, especially: the furtherance of the acceptance and sale of merchandise through advertising, publicity, or discounting." *Promotion*, Merriam-Webster, https://www.merriam-webster.com/dictionary/promotion (last visited Feb. 20, 2026). For the sake of thoroughness, the term "publicity" is defined as "an act or device designed to attract public interest." *Publicity*, Merriam-Webster, https://www.merriam-webster.com/dictionary/publicity (last visited Feb. 20, 2026). Putting these definitions together, the Court interprets the Provision to prohibit the Defendants from using or referencing the Plaintiffs' trademarks to either create public exposure for or sell the Defendants' products.

### B. "Keyword Bidding" as Breach

Now that the Court understands the Provision as written, the Court will turn to the issue of whether the Defendants' "keyword bidding" breaches the Settlement Agreement. The answer is readily apparent. In the Defendants' own words, "[t]his process . . . *uses* keywords to link users seeking a particular product with advertisements tailored to that user's search, *such that certain products appear more prominently in 'sponsored' search results.*" (Br. in Supp. of Defs.' Mot. to Dismiss, at 2 (emphasis added)). The specific keywords utilized by the Defendants in "keyword bidding," as alleged by the Plaintiffs, involve the Plaintiffs' trademarks. (*See* Compl. ¶ 25). Even if the Defendants themselves did not admit to "using" the Plaintiffs' trademarks in their briefing, such activity must at least reference the trademarks as the technique directs

13

consumers searching for the Plaintiffs' products to the Defendants' own products. (*See id.*).

Furthermore, under the Court's understanding of the phrase "commercial advertising or promotion" within the Provision, it is clear that the Defendants' conduct, as alleged by the Plaintiffs, is prohibited conduct. When a consumer (a member of the public) searches for the Plaintiffs' product through an online retailer, the Defendants use or reference the Plaintiffs' trademark to then promote their own product as a "sponsored" product for the Defendants' economic benefit. (*See* Br. in Supp. of Defs.' Mot. to Dismiss, at 2; Compl. ¶ 25). As part of its general commercial advertising campaign, the Defendants actively rely on the Plaintiffs' trademarks, which is plainly prohibited under the Settlement Agreement.

If the Defendants' intent was for the language of the Settlement Agreement to allow "keyword bidding," the Defendants should not have agreed to such broad language within the Provision or limiting language requiring the contract to be interpreted in accordance with the definitions within the Lanham Act. To some degree, the Defendants themselves acknowledge this shortcoming, as every case cited outside of the Lanham Act which allowed "keyword bidding" specifically defined "advertising" within their contracts. (*See* Br. in Supp. of Defs.' Mot. to Dismiss, at 16-17 (discussing *FTC v. Nat'l Urological Grp., Inc.*, 2015 WL 9951578 (N.D. Ga. Nov. 4, 2015), then discussing *Allstate Ins. Co. v. Airport Mini Mall, LLC*, 265 F. Supp. 3d 1356

(N.D. Ga. 2017)). The Settlement Agreement fails to define the term here. "[C]ourts are not at liberty to ignore the specific terms of the parties' written agreement and rewrite or revise a contract under the guise of construing it." *CLS Entertainment, Inc. v. Kenkam, LLC*, 370 Ga. App. 810, 815 (2024) (citation modified). Accordingly, the Court will not reward the Defendants' conduct by joining them in creating an imaginary technicality within the Settlement Agreement. Thus, the Plaintiffs have adequately alleged breach within their Complaint.

C. **Dismissal of Defendant Venning**

The Defendants also move to dismiss Defendant Venning from the action for two reasons. (*See* Br. in Supp. of Defs.' Mot. to Dismiss, at 19-22). First, the Defendants argue that the totality of allegations as to breach of contract are "on information and belief" and fail to satisfy applicable pleading standards. (*See id.* at 19). Second, the Defendants argue that even accepting the allegations "on information and belief," the structure of a corporation prevents holding Defendant Venning personally liable. (*See id.* at 19-22).

It is true that a district court does not have to take as true any allegations by a plaintiff who pleads solely "upon information and belief." *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013). Furthermore, the Court acknowledges that under Georgia law, a corporate officer is not personally liable on an action for breach of contract where the corporation failed to perform certain duties required by the agreement. *See Cherry v. Ward*, 204

Ga. App. 833, 834-35 (1992) (holding that the trial court erred in not granting a directed verdict for the president of a corporation when the evidence failed to demonstrate that the president was individually liable separate from the corporation's breach). However, evidence not pled "on information and belief" shows that Defendant Venning agreed to perform certain duties under the Settlement Agreement and that he may have breached those duties.

The facts show that the Previous Litigation was initiated against both Defendants by the Plaintiffs. (*See* Compl. ¶ 17). The Settlement Agreement was created to dismiss the Previous Litigation, with Defendant Venning signing both as the Chief Executive Officer of Defendant Wuffes as well as personally. (*See* Settlement Agreement at 11). Within the Settlement Agreement, Defendant Venning, Defendant Wuffes, and one other party are collectively referred to as the "Venning Parties." (*See id.* at 1). Later in the Settlement Agreement, in the section entitled "The Venning Parties' Warranties, Representations, and Obligations," the Settlement Agreement clearly states that the Venning Parties are subject to certain conditions, including the Provision. (*See id.* § 2(a)). Thus, under the facts considered by the Court, Defendant Venning has individual duties under the Provision. Specifically, Defendant Venning agreed in the Settlement Agreement that he would not "cause to be referenced or used" the Plaintiffs' trademarks "in any commercial advertising or promotion." (*See* Compl. ¶ 20; Settlement Agreement § 2(a)(1)).

As a corporate officer of Defendant Wuffes and as a former litigant against the Plaintiffs in the Previous Litigation, it is plausible that Defendant Venning took action to cause Defendant Wuffes to breach the Settlement Agreement. Although such information is pled "on information and belief," the Court declines to exercise its discretion to discount facts pled on this basis because the Court finds that there is a plausible basis for the belief. The fact that Defendant Venning has individual responsibilities under the Settlement Agreement and is the Chief Executive Officer of Defendant Wuffes, coupled with the fact that Defendant Wuffes breached the contract under the allegations contained in the Complaint makes it plausible that Defendant Venning has done so as well.

The Defendants' reliance on *Hydration Station USA Franchise Sys., LLC v. Seaverns*, 2021 WL 12104513 (N.D. Ga. Oct. 12, 2021), and *Am. S. Homes Holdings, LLC v. Erickson*, 2022 WL 2679437 (M.D. Ga. Jul. 11, 2022), to argue its position is misplaced. In *Hydration Station*, an individual defendant signed a settlement agreement in his individual capacity, as well as in a representative capacity for two entities, to settle litigation. *Hydration Station*, 2021 WL 12104513, at *1-*2. In a counterclaim arising out of a subsequent lawsuit, the claiming parties alleged that the two entities breached the settlement agreement and that the individual defendant directed the entities to breach the agreement. *Id.* at *2, *3 n.4. On a motion to dismiss, the court dismissed the individual defendant, finding that he was not personally

liable for the actions of the two entities under the terms of the settlement agreement. *Id.* at *4. Similarly, the court in *Erickson* dismissed an individual defendant from a breach of contract action when the plaintiffs failed to allege plausible facts showing personal liability, including any terms in the contract that imposed such individual liability. *Erickson*, 2022 WL 2679437, at *1.

Here, the terms of the Settlement Agreement are entirely distinguishable from both *Hydration Station* and *Erickson*. Defendant Venning had individual responsibilities under the Settlement Agreement. (*See* Compl. ¶ 20; Settlement Agreement § 2(a)(1)). Those duties specifically prohibit him from causing Defendant Wuffes to breach the Settlement Agreement. (*See id.*). No such duties were imposed on the individual defendant in *Hydration Station* or *Erickson*. *See Hydration Station*, 2021 WL 12104513, at *4 ("Here, personal liability would require a personal guaranty. Because the Settlement Agreement's plain terms and principles of Georgia contract law foreclose the argument that the Agreement contains such a guaranty, [the individual defendant] cannot be held liable for [the entity defendants'] filing of this suit"); *Erickson*, 2021 WL 12104513, at *1 ("The agreement here does not reveal an express agreement that [the individual defendant] is binding herself individually to any of the contractual obligations of the other parties to the contract.").

This is not to say that Defendant Venning is responsible for Defendant Wuffes' breach of the Settlement Agreement. Further discovery may show that

18

Defendant Venning did not direct Defendant Wuffes in engaging in "keyword bidding." At that time, Defendant Venning may properly seek to be dismissed from this action. But the Court finds it premature to do so now when the Plaintiffs have alleged plausible facts supporting a finding of personal liability against Defendant Venning. Accordingly, the Court will not dismiss Defendant Venning from this action.

## IV.  Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss [Doc. 14] is DENIED.

SO ORDERED, this  20th  day of February, 2026.

*[signature: Thomas W. Thrash]*
THOMAS W. THRASH, JR.
United States District Judge