IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NUTRAMAX LABORATORIES, INC., et al.,

Plaintiffs,

v.

ROWLO, LLC,

Defendant.

CIVIL ACTION FILE
NO. 1:25-CV-2481-TWT

**OPINION AND ORDER**

This is a breach of contract case. It is before the Court on Plaintiffs' Nutramax Laboratories, Inc. and Nutramax Veterinary Sciences, Inc.'s Motion for Partial Judgment on the Pleadings [Doc. 34]. For the reasons stated below, the Plaintiffs' Motion for Partial Judgment on the Pleadings [Doc. 34] is GRANTED in part and DENIED in part.

## I. Background[1]

This breach of contract case arises out of the alleged breach of a settlement agreement. The Plaintiffs research, develop, and sell a wide variety of animal health products. (Compl. ¶ 10 [Doc. 1]). Two of these products are named Cosequin and Dasuquin (collectively, the "Supplements"), which are

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion for Partial Judgment on the Pleadings. *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005).

joint health supplements in the companion animal market. (*Id.* ¶ 13). The Supplements have been registered with the U.S. Patent and Trademark Office, granting the Plaintiffs the exclusive right to use its trademarks in commerce in the United States, and have generated significant sales for the Plaintiffs via online retailers, brick-and-mortal retail establishments, and veterinarians. (*Id.* ¶¶ 13-15).

The Defendant is a competitor of the Plaintiffs. (*Id.* ¶ 22).[2] The Defendant "advertises, promotes, offers for sale, and sells dietary and nutritional supplements for animals under the WUFFES trademark." (*Id.* ¶ 5). Specifically, the Defendant markets and sells animal supplements that compete directly with the Plaintiffs' products, including the Supplements. (*Id.* ¶ 22).

In 2023, the Plaintiffs filed a complaint in the District of Wyoming against the Defendant and Venning alleging claims of common law unfair competition, defamation, and defamation per se (the "Previous Litigation").[3] (*Id.* ¶ 17). During the Previous Litigation, the parties entered into a settlement

---

[2] The Plaintiffs originally brought suit against Defendant Rowlo, LLC ("Wuffes") and Samuel Venning, one of the founders and the Chief Executive Officer of Defendant Wuffes. (*See id.* ¶¶ 1, 6). Under Federal Rule of Procedure 41(a)(2), the Plaintiffs moved to dismiss Venning from the proceedings without opposition, and the Court ultimately granted that request. (*See generally* Mot. for Voluntary Dismissal of Defendant Venning [Doc. 47]; Mot. for Voluntary Dismissal of Defendant Venning Order [Doc. 48]). Accordingly, Venning is no longer a Defendant to this action.

[3] *Nutramax Laboratories, Inc. et al v. Rowlo, LLC et al*, 1:23-cv-00085-SAH (D. Wyo.).

agreement to resolve all claims set forth in the Plaintiffs' complaint (the "Settlement Agreement"). (*Id.* ¶ 19). In the Settlement Agreement, the Defendant explicitly agreed that it would:

> [N]ot reference or use, or cause to be referenced or used, in any manner, the words Nutramax, Nutramax Laboratories®, Dasuquin®, Cosequin®, or any of Nutramax's various other registered or common law trademarks (including Nutramax's trade dress and copyright-protected packaging designs) that exist now or may exist in the future in any commercial advertising or promotion, including social media posts and comments (the "Provision").

(*Id.* ¶ 20). A breach of this agreement would also entitle the non-breaching party to an award of its costs and attorneys' fees from the subsequent litigation. (*Id.* ¶ 37). After entering into the Settlement Agreement, the parties filed a stipulated dismissal of the Previous Litigation with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (*Id.* ¶ 21).

The dispute between the parties does not end there. After the conclusion of the Previous Litigation, the Defendant started referencing or using the Plaintiffs' registered and common law trademarks, including those associated with the Supplements, as keywords on Amazon.com and other online retailers in order to promote their products. (*Id.* ¶ 24). Specifically, the Defendant used words associated with the Plaintiffs' trademarks as keywords in the advertising or promotion of their own products by causing the Defendants' products to appear at the top of any search for the Plaintiffs' products (including for the Supplements) as a "sponsored" result or as a banner advertisement when using Amazon.com or other online retailers. (*Id.* ¶ 25).

Believing this to be a breach of the Settlement Agreement, the Plaintiffs sent the Defendant notice of their intent to file suit unless the Defendant ceased its conduct. (*Id.* ¶ 28). The Defendant refused, and the Plaintiffs subsequently filed the present action in this District pursuant to the choice-of-law and jurisdiction provisions in the Settlement Agreement. (*Id.* ¶¶ 8-9, 28). In the Complaint, the Plaintiffs request relief from the Court for two counts, one for breach of contract and one for specific performance under Georgia law. (*See id.* ¶ 30-48). After the Court denied the Defendant's Motion to Dismiss, the Defendant then filed its Answer. (*See generally* Mot. to Dismiss Op. & Order [Doc. 23]; Am. Answer [Doc. 30]). The Plaintiffs now bring this Motion for Partial Judgment on the Pleadings, seeking to eliminate certain affirmative defenses from the Defendant's Amended Answer. (*See generally* Pls.' Mot. for Partial J. on the Pleadings [Doc. 34]).

## II. Legal Standards

Federal Rule of Civil Procedure ("Rule") 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A court should grant a motion for judgment on the pleadings where "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Scott*, 405 F.3d at 1253. "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). A complaint should be dismissed under Rule

12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion for judgment on the pleadings, the Court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the nonmoving party. *Scott*, 405 F.3d at 1253.

Under Rule 12(f), the Court may on its own or by motion strike all or a portion of a "pleading" that contains "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally "disfavored," and courts regularly deny such "drastic" measures "unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Allen v. Life Ins. Co. of N.A.*, 267 F.R.D. 407, 410 (N.D. Ga. 2009) (citation omitted); *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699 (S.D. Fla. 2013) (citation omitted).

## III. Discussion

In the Amended Answer, the Defendant asserts ten affirmative defenses to the allegations within the Plaintiffs' Complaint. The Plaintiffs seek judgment on all of these affirmative defenses with the exception of the fifth

and sixth defense asserted by the Defendant. (Pls.' Mot. for Partial J. on the Pleadings, at 1).

In response, the Defendant first argues that the Plaintiffs' attempt to strike affirmative defenses through a motion for judgment on the pleadings under Rule 12(f) should be construed as a motion to strike under Rule 12(c). (*See* Def.'s Resp. to Pls.' Mot. for Partial J. on the Pleadings, at 3-10 [Doc. 44]). The Defendant then argues on the merits of each affirmative defense under either standard. (*See id.* at 10-23). The Court will first determine the proper standard to apply to the Plaintiffs' motion and then address each of the affirmative defenses.

**A. Standard of Review Dispute**

Rule 12(c) governs a motion for judgment on the pleadings. It contains a single line: "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In comparison, Rule 12(f), which provides for motions to strike, is more verbose. It allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either *sua sponte* or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f).

The Defendant asks the Court to convert the Plaintiffs' Rule 12(c) motion into a Rule 12(f) motion because the Plaintiffs' motion targets

affirmative defenses present within the Defendant's Amended Answer without attempting to show that there are no material facts in dispute. (Def.'s Resp. to Pls.' Mot. for Partial J. on the Pleadings, at 3-4). The Defendant does not ask the Court to do so in the absence of legal authority. Some court within this Circuit, but not all, have done so when "'a plaintiff seeks to dispute the legal sufficiency of fewer than all of the defenses raised in the defendant's pleading.'" *McNeal v. Fram Renewable Fuels*, 2025 WL 1928748, at *3 (S.D. Ga. Jul. 14, 2025) (quoting 5C Wright & Miller's Federal Practice & Procedure § 1369 (3d ed. 2026) and collecting cases within the Circuit in support and against the conversion). This is because, as one secondary source states, a Rule 12(c) motion "leads to the entry of a judgment" and, where a motion to strike would be untimely, a Rule 12(c) motion should never be the appropriate vehicle "to couch an untimely motion to strike under Rule 12(f)." 5C Wright & Miller's Federal Practice & Procedure § 1369 (3d ed. 2026).

The issue of timeliness potentially applies here. The Defendant filed and served its Amended Answer on April 9, 2026, and the Plaintiffs filed and served their Motion for Partial Judgment on the Pleadings on May 5, 2026. (*See generally* Am. Answer; Pls.' Mot. for Partial J. on the Pleadings). Thus, if the Court were to construe the Plaintiffs' Rule 12(c) motion as a Rule 12(f) motion, it would be untimely as the Plaintiffs' Rule 12(c) motion was filed 27 days after the Defendant filed its Amended Answer. *See* Fed. R. Civ. P. 12(f) (requiring a motion to strike to be filed within 21 days of being served with the pleading).

This conclusion does not end the inquiry. The Court must still determine whether the contents of the Plaintiffs' motion are better characterized as a Rule 12(f) motion instead of a Rule 12(c) motion. "When interpreting a Federal Rule of Civil Procedure, [the Court begins], as always, with the Rule's text." *United States ex rel Sedona Partners LLC v. Able Moving & Storage Inc.*, 146 F.4th 1032, 1041 (11th Cir. 2025) (citation modified). "In performing this analysis, [the Court gives] the Federal Rules of Civil Procedure their plain meaning." *Id.* (citation modified). The Eleventh Circuit, relying on the Supreme Court, has warned federal courts "to abstain from supplementing the Federal Rules of Civil Procedure" when interpreting the Rules. *Id.* at 1042 (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 167 (1993)). At the same time, the Eleventh Circuit advises federal courts to consider a Rule's context "within the Federal Rules of Civil Procedure" as a whole. *Id.* at 1041.

Turning to the relevant Rules, Rule 12(c) is written broadly. The text simply imposes two requirements on a movant to bring a motion for judgment on the pleadings: (1) the pleadings must be closed and (2) the movant must file his motion early enough not to delay trial. *See* Fed. R. Civ. P. 12(c). Rule 12(f) permits a court to strike elements of a pleading (1) on its own or (2) by a party's motion within 21 days after service of the pleading. *See* Fed. R. Civ. P. 12(f). Once this preliminary requirement has been satisfied, a court may strike parts of a pleading only if it concludes that (1) it amounts to an insufficient defense,

or (2) the matter is (a) redundant, (b) immaterial, (c) impertinent, or (d) scandalous. *See id*; *see also Benson v. Enter. Leasing Co. of Orlando, LLC*, 2021 WL 2138779, at *1 (M.D. Fla. Mar. 15, 2021) ("A motion to strike pursuant to [Rule] 12(f) is appropriate to request the Court to strike 'from a pleading' an insufficient defense or a redundant, immaterial, impertinent or scandalous matter; it is not an authorized motion for any other purpose.").

From the plain text of these Rules, Rule 12(c) does not foreclose a plaintiff's ability to bring a motion for partial judgment on the pleadings. *See McNeal*, 2025 WL 1928748 at *4 (concluding similarly). Neither does it foreclose a plaintiff from bringing a motion to strike affirmative defenses as long as the motion is timely and the plaintiff demonstrates that the affirmative defense is insufficient. Most importantly, nowhere in Rule 12 or elsewhere in the Federal Rules of Civil Procedure is there any requirement that a plaintiff seek to challenge an affirmative defense through a specific, single vehicle. Determining that the Rule 12(c) motion must be converted into a Rule 12(f) motion would necessitate the Court to judicially supplement the Federal Rules of Civil Procedure and create such a requirement. This is prohibited. *See Able Moving & Storage Inc.*, 146 F.4th at 1042.

But despite the rule being clear and unambiguous on the issue, the court in *McNeal* takes one further step in its analysis. In considering each Rule in the context of each other, the court compares the judicially-determined legal standards employed under a Rule 12(c) motion and a Rule 12(f) motion to

determine whether the conversion must occur. *McNeal*, 2025 WL 1928748 at *4 (quoting *Tomason v. Stanley*, 297 F.R.D. 541, 545 (S.D. Ga. 2014)). After conducting such an analysis and applying the substance of the Rule 12(c) motion, the *McNeal* court ultimately concluded that the motion must be converted to a Rule 12(f) motion. *See id.*

Here, the Court respectfully disagrees with the analysis conducted by *McNeal* for four connected reasons. First, the text of Rules 12(c) and 12(f) are clear and unambiguous, even when read in context with one another and the greater Federal Rules of Civil Procedure. When the Rules are clear and unambiguous, the Court need not engage in further interpretation. *McNeal*, 2025 WL 1928748 at *4 ("The Court must 'give the Federal Rules of Civil Procedure their plain meaning,' and the 'inquiry is complete' if the Court finds 'the text of the Rule to be clear and unambiguous.'" (quoting *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 540-41 (1991))). The Rules permit litigants to make several motions and, for most of these motions, the Rules impose certain requirements that must be met. The drafters knew how to and have imposed stricter requirements on the use of certain rules above others, like in the case of Rule 12(f) and Rule 12(c). *See* Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 12(f). It follows that the broad drafting of Rule 12(c) permits a litigant to attack affirmative defenses within a defendant's answer.

The Court's second reason for disagreement is that the analysis in *McNeal* incorrectly assumes that each Rule can only apply to a single action

by a movant. Indeed, the court in *McNeal* ultimately determined that the substance of the plaintiff's motion was effectively a better fit for a Rule 12(f) motion than a Rule 12(c) motion despite being brought as a motion for judgment on the pleadings. *McNeal*, 2025 WL 1928748 at *4. In doing so, the court created a balancing test that overrides the wishes of a litigant and that is absent from the text of the Federal Rules of Civil Procedure. To that end, the *McNeal* court's decision supplements the Rules, which is prohibited. *See Able Moving & Storage Inc.*, 146 F.4th at 1042.

The third issue the Court takes with the decision in *McNeal* is that the test created by the court is different from almost every other scenario where a court is permitted to convert one type of motion into another. Not only does the *McNeal* decision remove the discretionary nature of conversion, it also automatically converts the motion to one brought under Rule 12(f) even if the parties operate within the boundaries of a motion for judgment on the pleadings. For example, a court has the discretion to convert a motion to dismiss or a motion for judgment on the pleadings into a motion for summary judgment if the movant attaches documents to the motion. *See Horsley v. Feldt*, 304 F.3d 1125, 1133-35 (11th Cir. 2002). The reviewing court's discretion hinges on whether the court relies on the added documents in reviewing the motions. *See id.* No similar conversion occurs between Rule 12(c) and Rule 12(f). Following the conversion in *McNeal*, a court would be required to convert

the motion if the substance of the motion for judgment on the pleadings is more similar to a motion to strike.

Fourth, even if the Court conducted an analysis of the legal standards governing Rule 12(c) and Rule 12(f), the Court would not reach the same conclusion as the *McNeal* court did and find that Rule 12(f) is the preferable vehicle for striking affirmative defenses. For a moving party to prevail on a motion for judgment on the pleadings, there must be (1) "no material facts in dispute" and (2) "the moving party is entitled to judgment as a matter of law." *Scott*, 405 F.3d at 1253. In contrast, "[a] court should . . . grant a motion to strike a defense as legally insufficient as a matter of law when (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law." *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 186 F. Supp. 3d 1370, 1375 (N.D. Ga. 2016) (citation modified); *see also Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chemical Corp.*, 684 F.2d 776, 779 (11th Cir. 1982) (addressing a motion to strike an affirmative defense and determining that the question for the Eleventh Circuit was "whether as a matter of law the defense asserted by Kaiser was insufficient"). In the Plaintiffs' Rule 12(c) motion and briefing, they focus on how most of the affirmative defenses asserted by the Defendant fail as a matter of law, giving little consideration to the issue of whether there are any material facts in dispute. Nonetheless, the Plaintiffs do acknowledge that this element is required to assert a proper Rule 12(c) motion instead of a Rule 12(f) motion and

generally assert legal standards consistent with Rule 12(c). *Cf. McNeal*, 2025 WL 1928748 at *4 (finding the substance of the motion squared with the Rule 12(f) standard because the plaintiff (1) cited the Rule 12(f) standard instead of the Rule 12(c) standard, (2) made no attempt to show that there were "no material facts in dispute," and (3) requested that the defendant be ordered to replead its defenses, which is more common with Rule 12(f) relief than Rule 12(c) relief). On these standards alone, the Court cannot determine whether a Rule 12(c) or a Rule 12(f) motion is the preferable vehicle.

Delving deeper into the motions, the answer becomes clearer. "Motions to strike affirmative defenses are generally disfavored." *Luxottica Grp.*, 186 F. Supp. at 1374; *see Schmidt v. Life Ins. Co. of N. Am.*, 289 F.R.D. 357, 358 (M.D. Fla. 2012) ("[A] motion to strike is a drastic remedy and is disfavored by the courts . . . Therefore, a motion to strike should be granted only if 'the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" (citations omitted)). But where a court has the option to proceed under Rule 12(c) or Rule 12(f), courts prefer to proceed under Rule 12(f) because a motion for judgment on the pleadings carries finality. *See* 5C Wright & Miller's Federal Practice & Procedure § 1369 (3d ed. 2026).

The difference between the two motions is even more apparent when the Court looks at how each is analyzed. The focus of a Rule 12(f) analysis for striking an affirmative defense generally focuses on how the affirmative

defense was pled rather than considering its merits. *See Tomason*, 297 F.R.D. at 544-45 (discussing whether the pleading standard in *Twombly* applies to an affirmative defense pleading to survive a motion to strike). Meanwhile, as is apparent from the elements of a Rule 12(c) motion, the primary focus is whether the affirmative defenses fail *as a matter of law*, as opposed to simply meeting pleading standards. *See Scott*, 405 F.3d at 1253.

Here, the Plaintiffs' motion focuses more on how each affirmative defense fails as a matter of law as opposed to any pleading insufficiency. First, the Plaintiffs seek judgment on the first and seventh affirmative defenses because, they argue, the Court's previous order resolves the defenses as a matter of law. (*See* Br. in Supp. of Pls. Mot. for Partial J. on the Pleadings, at 5-8 [Doc. 34-1]). Second, they seek judgment as a matter of law on the second, third, and fourth affirmative defenses based on the parties' factual pleadings. (*See id.* at 8-13). Third, the Plaintiffs seek judgment on the eighth affirmative defense because it is contrary to Georgia contract law. (*See id.* at 14-15). Fourth, they seek judgment on the tenth affirmative defense because the pleadings cannot support a mutual mistake of fact defense as a matter of law. (*See id.* at 19-21). The majority of these arguments fit squarely within the boundaries contemplated by Rule 12(c).

This is not to say that a motion to strike cannot be an appropriate vehicle for the arguments brought here. But when the Plaintiffs have brought the motion under Rule 12(c), the substance of the motion is more similar to a Rule

12(c) motion than a Rule 12(f) motion, and the Plaintiffs seek relief consistent with Rule 12(c), the Court cannot find that Rule 12(f) is the "better" vehicle for the Plaintiffs' claims. Therefore, the Court respectfully disagrees with *McNeal* and will consider the motion as originally brought before the Court.

**B. Defendant's Affirmative Defenses**

The Defendant's affirmative defenses, in order, assert: (1) that the Settlement Agreement's prohibition on keyword bidding is void for vagueness and unenforceable; (2) the Plaintiffs' claims are barred by the doctrine of waiver; (3) the Plaintiffs' claims are barred by the doctrine of acquiescence; (4) the Plaintiffs' claims are estopped by the Plaintiffs' conduct; (5) the Plaintiffs' damages are too speculative for recovery; (6) the Plaintiffs failed to mitigate damages; (7) the Plaintiffs' damages cannot include attorneys' fees because the claims are not covered by the Settlement Agreement; (8) the Defendant is entitled to some or all of the damages that the Plaintiffs seek because the Plaintiffs breached the Settlement Agreement by suing the Defendant in federal court in the District of Wyoming over claims released by the Settlement Agreement; (9) the Plaintiffs cannot recover because it constitutes an illegal general restraint on trade under Georgia law; and (10) the Settlement Agreement is void because the consideration upon which the contract was based was given as a result of a mutual mistake of fact. (Am. Answer, at 7-10). The Court now addresses each of the relevant affirmative

defenses as mentioned within the Plaintiff's Motion for Partial Judgment on the Pleadings.

### 1. First and Seventh Affirmative Defenses

The Plaintiffs first argue for judgment on the pleadings on the first and seventh affirmative defenses because, it argues, the Court's previous Motion to Dismiss Opinion and Order already resolved both affirmative defenses. (Br. in Supp. Pls. Mot. for Partial J. on the Pleadings, at 5-8). Indeed, in that Opinion and Order, the Court held that the practice of "keyword bidding," a process that uses keywords to link users seeking a particular product with advertisements tailored to that user's search, such that certain products appear more prominently in "sponsored" search results, was expressly prohibited by the terms of the Settlement Agreement. (Mot. to Dismiss Op. & Order, at 13-14).

The Defendant disagrees, arguing that these affirmative defenses cannot be resolved on the Plaintiffs' Motion for Partial Judgment on the Pleadings because the Defendant disputes whether its conduct amounts to "keyword bidding," raising a material issue of fact. (Def.'s Resp. in Opp'n to Pls.' Mot. for Partial J. on the Pleadings, at 20-23). This argument appears to be "tilting at windmills" and completely misconstrues the purpose of an affirmative defense. (Br. in Supp. of Pls.' Mot. for Partial J. on the Pleadings, at 1).

As explained by the Sixth and Eleventh Circuits, "'[a]n affirmative defense raises matters extraneous to the plaintiff's *prima facie* case.'" *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) (quoting *Ford Motor Co. v. Transport Indemnity Co.*, 795 F.2d 538, 546 (6th Cir. 1986)). On the other hand, "[a] defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *Id.* Put colloquially, for the Defendants' affirmative defenses to be invoked, there must be no material dispute of fact as to whether the Plaintiffs can factually prove the elements of their claims.

Here, the Plaintiffs brought claims against the Defendant for breach of contract and specific performance under Georgia common law. (*See* Compl. ¶¶ 30-48 [Doc. 1]). Specific performance may be granted in a breach of contract case when "monetary damages recoverable at law would not constitute adequate compensation for another parties' nonperformance." *Sexton v. Sewell*, 351 Ga. App. 273, 275 (2019). In other words, the Plaintiffs' specific performance count rises and falls with the breach of contract count under Georgia law. Thus, the Court turns to the elements of breach of contract, which are "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Bazemore v. U.S. Bank Nat'l Ass'n*, 363 Ga. App. 723, 731 (2022) (citation omitted). For each of the affirmative defenses to be invoked, the Plaintiffs must have shown facts that demonstrate that (1) the Defendant breached the Settlement Agreement,

causing (2) resulting damages (3) to the Plaintiffs. Otherwise, the Defendant's defense would not be an affirmative defense.

Armed with this understanding, the Court is unconvinced by the Defendant's argument that any material dispute of fact exists in this case to prevent the First and Seventh Affirmative Defenses from being struck. For the Defendants to breach the Settlement Agreement, the Defendant must have engaged in "keyword bidding," as that is the claim the Plaintiffs make in their Complaint. (*See* Compl. ¶¶ 24-25). While there may be a material dispute of fact as to whether the Defendants engaged in "keyword bidding" or any other conduct that would be a breach of the Settlement Agreement, such disputes of fact are not relevant to the instant Motion. This is because, in raising an affirmative defense, the Defendant has conceded to those facts but still argues that the defense stands. This conclusion does not preclude the Defendant from raising these defenses at a later stage of litigation, but it cannot raise them as affirmative defenses.

Having established that there are no material facts in dispute, this Court has already determined that the Settlement Agreement unambiguously prohibits "keyword bidding." (Mot. to Dismiss Op. & Order, at 13). The Provision's prohibition on using the Plaintiffs' trademarks in "commercial advertising or promotion" *wholly* encompasses "keyword bidding." (*Id.* at 14). Ultimately, if the Defendant engages in "keyword bidding," this Court has already concluded that such behavior would result in a breach of the

Settlement Agreement. The only way for the Defendants to prevail on the issue of breach is for further evidence to demonstrate that the Defendants never engaged in "keyword bidding," conduct similar to "keyword bidding," or conduct that would otherwise breach the Settlement Agreement. Accordingly, the Court grants the Plaintiffs' Motion for Judgment on the Pleadings on the first and seventh affirmative defenses.

**2. Second, Third, and Fourth Affirmative Defenses**

The Plaintiffs seek judgment on the pleadings for the second, third, and fourth affirmative defenses under the facts established by the pleadings. (*See* Br. in Supp. of Pls.' Mot. for Partial J. on the Pleadings, at 8). The Amended Answer states that these affirmative defenses apply because the Plaintiffs knew or should have known that they were engaging in keyword bidding "before, during, or after" execution of the Settlement Agreement." (Am. Answer 8-9).

Waiver, estoppel, and acquiescence are affirmative defenses. *See Mahsa, Inc. v. Al-Madinah Petrol., Inc.*, 276 Ga. App. 890, 895 (2005) ("Waiver and estoppel are affirmative defenses under [O.C.G.A.] § 9-11-8(c)."); *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1207 (11th Cir. 2008) (discussing acquiescence as an affirmative defense). Thus, even if the parties agreed on the facts for every element of the breach of contract claim, there are still outstanding facts to resolve relevant to the affirmative defense.

The Court briefly reviews the elements of each affirmative defense. The second affirmative defense states that the Plaintiffs were aware of the alleged conduct but failed to object or take any action for an extended period, thereby waiving any claim for breach of contract. (Am. Answer, at 8). Under Georgia law, waiver "is ordinarily an intentional relinquishment or abandonment of a known right or privilege, and the determination of whether there has been a valid waiver depends on the circumstances of each case." *Wiggins v. State*, 298 Ga. 366, 369 (2016) (citation modified). Parties to a contract can waive contractual provisions for their own benefit, and such waivers can be demonstrated through conduct. *Greenberg Farrow Architecture, Inc. v. JMLS 1422, LLC*, 339 Ga. App. 325, 331 (2016). Waiver is generally a question for the jury except in situations where "the facts and circumstances essential to the question are clearly established." *Id.* at 331-32. "A party's protracted silence, or unreasonable delay in making protest, can raise a fact issue as to whether she has waived a contractual right." *AAF-McQuay, Inc. v. Willis*, 308 Ga. App. 203, 217-18 (2011); *see also Eckerd Corp. v. Alterman Props., Ltd.*, 264 Ga. App. 72, 75 (2003) ("[W]here the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible." (citation modified)).

The third affirmative defense states that the "Plaintiffs knew or reasonably should have known of the alleged conduct (including keyword bidding) before, during, and after execution of the Settlement Agreement, yet failed to object or take any action for an extended period, thereby acquiescing to the conduct." (Am. Answer, at 8). To establish the affirmative defense of acquiescence, a defendant must prove: "(1) the plaintiff actively represented it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Angel Flight of Ga., Inc.*, 522 F.3d at 1207 (citation omitted). Unlike the defense of laches, acquiescence requires a defendant to show that there was some form of active consent by the plaintiff. *Id.* (citation omitted).

The fourth affirmative defense, estoppel, asserts that the "Plaintiffs are estopped from asserting breach and/or seeking equitable relief because, by words, conduct, and/or silence after knowledge of the alleged conduct, [P]laintiffs induced [the Defendant] to believe [P]laintiffs would not treat such conduct as a breach, and [the Defendant] reasonably relied to their detriment." (Am. Answer, at 8). "In order for an equitable estoppel to arise, there shall generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his or her injury." O.C.G.A. § 24-14-29. Promissory estoppel, on the other hand, requires proof that:

> (1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiff to rely on such promise; (3) the plaintiff relied on such promise to [its] detriment; (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiff changed [its] position to [its] detriment by surrendering, forgoing, or rendering a valuable right.

*Griffin v. State Bank of Cochran*, 312 Ga. App. 87, 94-95 (2011) (citation modified). Estoppels are not favored by Georgia law. *Id.* (citation omitted).

Before addressing the arguments for and against Judgment on the Pleadings, the Court revisits the Defendant's acquiescence affirmative defense. Georgia has codified its recognized affirmative defenses and acquiescence is notably absent. *See* O.C.G.A. § 9-11-8(c). Instead, it appears to be an affirmative defense often used in trademark disputes and is recognized by the Trademark Trial and Appeals Board under the Lanham Act. *See Coach House Rest., Inc. v. Coach and Six Rests., Inc.*, 934 F.2d 1551, 1558 (11th Cir. 1991); *Angel Flight of Ga., Inc.*, 522 F.3d at 1207-08. Because the Court finds no basis for applying the doctrine of acquiescence to any state or common-law cause of action within Georgia, the Court grants judgment on the pleadings as to acquiescence being pled as an affirmative defense.

Thus, for this section, only waiver and estoppel remain. Here, the Plaintiffs make several arguments for judgment on the pleadings as to these two affirmative defenses. First, the Plaintiffs argue that judgment on the pleadings is proper because the Amended Answer does not set forth facts sufficient to create a material dispute of fact and judgment is proper as a

matter of law. (Br. in Supp. of Pls. Mot. for Partial J. on the Pleadings, at 10). Second, the Plaintiffs argue that they cannot waive their rights under the Settlement Agreement arising from conduct before the Settlement Agreement was executed. (*Id.* at 10 n. 3). Third, and related to the second point, even if the Plaintiffs learned of the Defendant's breach on the date of signing the Settlement Agreement, the Plaintiffs' delay in filing suit alone would not constitute waiver or estoppel as a matter of law. (*Id.* at 10-12). Finally, the Plaintiffs point to the Settlement Agreement's non-waiver provision which precludes waiver as a defense. (*Id.* at 12-13).

The Court declines to grant judgment on the pleadings as to waiver and estoppel. It is true that the evidentiary burden to establish waiver or estoppel in Georgia is high. *See Greenberg Farrow Architecture, Inc*, 339 Ga. App. at 331-32; *Griffin*, 312 Ga. App. at 94-95. It is not, however, insurmountable. The factual record in this case has not been developed, and all the Court has to go on is the allegations in the Complaint. And the Plaintiffs have not pointed to any agreed-upon facts between the parties on the issue of waiver for judgment on the pleadings to be proper. This includes any facts that may indicate the Plaintiffs engaged in conduct waiving the non-waiver clause. *See Yash Sols., LLC v. N.Y. Glob. Consultants Corp.*, 352 Ga. App. 127, 136, 136 n. 20 (2019) (discussing Georgia law that supports a finding that a party's conduct may waive a non-waiver clause). While the Plaintiffs have not pled in their Complaint any facts outside of the delay in filing suit in support of the waiver

or estoppel defenses, that alone is not dispositive on the issue. While the Court takes all allegations in the Complaint as true, the Plaintiffs, as the moving party, do not gain the benefit of construction as they would on a motion to dismiss. *See Scott*, 405 F.3d at 1253. Because discovery of additional facts could support a finding of waiver or estoppel, the Court declines to grant judgment on the pleadings for the second and fourth affirmative defenses.

**3. Eighth Affirmative Defense**

The Defendant's eighth affirmative defense states that it is "entitled to set off some or all of the damages that [P]laintiffs seek through their complaint because [P]laintiffs breached the Settlement Agreement by suing [the Defendant] in the District of Wyoming over claims released by the Settlement Agreement." (Am. Answer, at 10).[4] The Plaintiffs seek judgment on the pleadings for two reasons: (1) a set off is not an affirmative defense but a counterclaim; and (2) even if the affirmative defense were styled as a counterclaim, it would fail as a matter of law because it would allow the Defendant to obtain an impermissible double recovery. (Br. in Supp. of Pls.' Mot. for Partial J. on the Pleadings, at 14). Despite the Defendant's insistence that the first argument elevates form over substance, (Def.'s Resp. in Opp'n to Pls.' Mot. for Partial J. on the Pleadings, at 19), the Court concludes that the

[4] The Court notes that, since the filing of the Amended Answer, the action in the District of Wyoming has been transferred to this Court separately from the instant action. *See generally Nutramax Labs Inc. et al. v. Rowlo LLC et al.*, 1:25-cv-6971-TWT, Doc. 82.

form of the affirmative defense necessitates entry of a limited judgment on the pleadings.

The right to set-off is not an affirmative defense recognized by Georgia law. *See* O.C.G.A. § 9-11-8(c); *Gilco Invs, Inc. v. Stafford Cordele, LLC*, 267 Ga. App. 167, 169-70 (2004). Indeed, "[a] set-off or recoupment is not a defense to the liability that is being asserted in the main action. A defendant's set-off or recoupment seeks affirmative relief against the plaintiff and, therefore is, in effect, a 'counterclaim' rather than a 'defense.'" *Fifth Third Bank, Nat'l Assoc. v. 1st Choice Renovations and Constr.*, 2023 WL 10366036, at *6 (N.D. Ga. Sep. 30, 2023) (quoting *T.V. Tempo, Inc. v. T.V. Venture, Inc.*, 182 Ga. App. 198, 201 (1987) (quotation marks omitted)). Because the eighth affirmative defense asserts a right to set-off, and set-offs are not recognized as an affirmative defense under Georgia law, the Court will enter judgment on the pleadings as to the Defendant's set-off affirmative defense to the extent it is pled as an affirmative defense and not as a counterclaim.

**4. Ninth Affirmative Defense**

The Defendant's ninth affirmative defense states that the Plaintiffs cannot recover because the provision of the Settlement Agreement that the Plaintiffs are suing under is an illegal restraint on trade "including under O.C.G.A. § 13-8-2" because it is not reasonable in time, geographic area, and/or scope. (Am. Answer, at 10). The Plaintiffs seek judgment on the pleadings as to this affirmative defense because the statute is inapplicable to the Settlement

Agreement. (*See* Br. in Supp. of Pls.' Mot. for Partial J. on the Pleadings, at 15-19). The Defendant, in response, argues that the affirmative defense is broader than O.C.G.A. § 13-8-2 and that material facts are in dispute to resolve the affirmative defense. (*See* Def.'s Resp. in Opp'n to Pls.' Mot. for Partial J. on the Pleadings, at 16-17). But the Defendant does not appear to contest whether O.C.G.A. § 13-8-2 is applicable to its affirmative defense.

The statute cited within the affirmative defense contains a simple premise: "[a] contract that is against the policy of the law cannot be enforced." O.C.G.A. § 13-8-2(a). It then lists five non-exhaustive examples of contracts that are deemed contrary to public policy, such as "[c]ontracts in general restraint of trade, as distinguished from contracts which restrict certain competitive activities, as provided in Article 4 of this chapter." O.C.G.A. §§ 13-8-2(a), (a)(2). Article 4 then provides an *exhaustive* list of seven groups where its provisions are applicable: (1) "[e]mployers and employees;" (2) "[d]istributors and manufacturers;" (3) "[l]essors and lessees;" (4) "[p]artnerships and partners;" (5) "[f]ranchisors and franchisees;" (6) "[s]ellers and purchasers of a business or commercial enterprise; and (7) "[t]wo or more employers." O.C.G.A. § 13-8-52(a); *see* O.C.G.A. § 13-8-52(b).[5]

[5] The Defendant relies on Georgia Supreme Court precedent to state that Article 4's list is non-exhaustive. (Def.'s Resp. in Opp'n to Pls.' Mot. for Partial J. on the Pleadings, at 16 (quoting and citing *Innovative Images, LLC v. Summerville*, 309 Ga. 675, 681 (2020))). This interpretation is erroneous. The Supreme Court of Georgia stated that "[t]he list in *[O.C.G.A.] § 13-8-2(a)* is expressly non-exhaustive." *Innovative Images, LLC*, 309 Ga. at 681 (emphasis added). The Court agrees with this statement. But Article 4's

If the contract is between one of these groups, then Georgia law states that any restrictive covenants that restrict competition must be "reasonable in time, geographic area, and scope of prohibited areas." O.C.G.A. § 13-8-53(a). Here, it is clear that Article 4's provisions are inapplicable to the Defendant, and the Defendant does not make any attempt to dissuade the Court otherwise. None of the categories discussed in O.C.G.A. § 13-8-52(a) are relationships contemplated by the Settlement Agreement between the parties. Thus, the Defendant's ninth affirmative defense falls outside of O.C.G.A. § 13-8-53(a) and O.C.G.A. § 13-8-2(a)(2).

Still, the Defendant drafted its ninth affirmative defense to allow for this variation. The ninth affirmative defense names O.C.G.A. § 13-8-2 in a general sense but is written to be inclusive of other statutes. But the Defendant makes little use of this safety valve when briefing the issue—the only statute that the Defendant draws authority from throughout its briefing is O.C.G.A. § 13-8-2. Thus, giving the benefit of the doubt, the Defendant seeks to assert that the Settlement Agreement's restrictive covenant is unenforceable as a matter of public policy for reasons outside of O.C.G.A. § 13-8-2(a)(2).

As an initial matter, it is clear that the Settlement Agreement is not a contract "tending to corrupt legislation or the judiciary," a contract "to evade

provisions fall between O.C.G.A. § 13-8-50 and § 13-8-59, and the list at issue is found in O.C.G.A. § 13-8-52. So, while the list in O.C.G.A. § 13-8-2 describing which type of contracts are against public policy is non-exhaustive, the language of O.C.G.A. § 13-8-52(a)'s list is decidedly exhaustive.

or oppose the revenue laws of another country," a "wagering contract[ ]," or a contract "of maintenance or champerty." O.C.G.A. §§ 13-8-2(a)(1), (3), (4), (5). Thus, for the Defendant to succeed, the Court must rely on an unenumerated ground that suffices to make the contract contrary to public policy.

The road for the Defendant to establish such an affirmative defense is not easy. The Georgia Supreme Court has emphasized that "'courts must exercise extreme caution in declaring a contract void as against public policy' and may do so only 'where the case is free from doubt and an injury to the public clearly appears.'" *Innovative Images, LLC*, 309 Ga. at 681 (citation omitted). "Importantly, a contract is void as against public policy not because the *process* of entering the contract was improper and objectionable by one party or the other, but rather because the *resulting agreement* itself is illegal and normally unenforceable by either party." *Id.* (emphasis in original).

In this case, there is a giant question mark over whether a prohibition on keyword bidding is against public policy. The Second Circuit's analysis in *1-800 Contacts, Inc. v. Fed. Trade Comm'n*, 1 F.4th 102 (2d Cir. 2021), is loosely instructive in this determination. There, the petitioner entered into thirteen settlement agreements to resolve certain trademark infringement violations alleged by the petitioner. *Id.* at 111. Each of these agreements prohibited keyword bidding, and the petitioner enforced the agreements when it perceived them to be breached. *Id.* The Federal Trade Commission ("FTC") issued an administrative complaint against the petitioner alleging that the petitioner

was engaging in anticompetitive behavior that required antitrust scrutiny by restricting keyword bidding. *Id.* The case was tried before an ALJ who concluded that the petitioner's restrictions on keyword bidding resulted in anticompetitive effects. *Id.* at 111-12. On appeal with the FTC, the decision was upheld. *Id.* at 112.

The Second Circuit vacated the FTC's Final Order. *Id.* at 122. In its opinion, the Second Circuit considered whether there were any anticompetitive effects from restricting keyword bidding in settlement agreements. *Id.* at 118-19. It looked to "direct evidence of output reductions, increased prices, or reduced quality in the relevant market," as well as evidence of slowed innovation or other manifestations of harm to consumer welfare as markers for anticompetitive conduct. *Id.* at 118 (citations omitted). Ultimately, the Second Circuit found that restrictions on keyword bidding resulted in no direct evidence of any price increases. *Id.* Additionally, it rejected the FTC's argument that "disrupted information flow" can be an anticompetitive effect, finding that "no Court of Appeals has held that a reduction of truthful information is necessarily a manifestation of anticompetitive harm," although it conceded that other circuits have occasionally considered advertising restraints in other contexts to have anticompetitive effects. *Id.* at 119.

The Second Circuit then considered any procompetitive justifications to restrictions on keyword bidding. *See id.* at 119-20. The petitioner asserted that two procompetitive effects arise out of the allowance of the practice: (1) reduced

litigation costs and (2) protecting the petitioner's trademark rights. *Id.* at 119. Although the FTC rejected the argument on appeal, the Second Circuit found that trademark protection is a strong procompetitive justification to allowing the trade restraint. *Id.* at 119-20. Ultimately, the Second Circuit found that there was substantially more procompetitive justification to keyword bidding restrictions than anticompetitive effects, especially where courts owe "significant deference to arm's length use agreements [of trademarks] negotiated by parties to those agreements." *Id.* at 122 (citation omitted).

The Settlement Agreement between the parties similarly implicates keyword bidding. This is an agreement between two competitors in a market meant to resolve ongoing litigation, and both parties consented to it. For there to be public policy concerns, there must be some practice that involves, at minimum, more harm than good. But here, the ninth affirmative defense simply states that the Provision is unreasonable in time, geographic area, and/or scope of prohibited activities and is contrary to public policy for that reason. (Am. Answer, at 10). The Defendant's briefing adds a little bit more context, arguing that it is against public policy for keyword bidding to be restricted by a Provision that does not reference the issue explicitly. (Def.'s Resp. in Opp'n to Pls.' Mot. for Partial J. on the Pleadings, at 17). But the Court has already held that the Settlement Agreement unambiguously prohibits such conduct. (Mot. to Dismiss Op. & Order, at 13). Even if such drafting were to be considered anticompetitive, it would not outweigh the procompetitive

justification arising from trademark protection. Thus, the Court grants judgment on the pleadings as to the ninth affirmative defense.

**5. Tenth Affirmative Defense**

The Defendant's tenth affirmative defense seeks to avoid liability on the basis of mutual mistake of fact. (Am. Answer, at 10). But in explaining the defense, the Defendant asserts that it was the only party that did not know keyword bidding was prohibited conduct. (*Id.*). In their Motion, the Plaintiffs argue for judgment on the pleadings as to this defense because (1) there is no mutual mistake of fact where the parties do not share the same mistaken understanding, and (2) the plain language of the Settlement Agreement unambiguously prohibited the keyword bidding. (Br. in Supp. of Pls.' Mot. for Partial J. on the Pleadings, at 19-21). In response, the Defendant concedes that it has not asserted a mutual mistake of fact and asks the Court to construe the affirmative defense as a unilateral mistake of fact. (Def.'s Resp. in Opp'n to Pls.' Mot. for Partial J. on the Pleadings, at 18).

The Court is not the Defendant's editor; it will not modify the Defendant's arguments in order to make the affirmative defenses make sense. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("the onus is upon the parties to formulate arguments"). Accordingly, the Court will take the affirmative defense as asserted. "[T]o prove mutual mistake, 'it must be shown that the alleged mistake resulted in a contract which fails to express accurately the intention of the parties.'" *Extremity Healthcare, Inc. v. Access*

*to Care Am., LLC*, 339 Ga. App. 246, 257 (2016) (quoting *CS-Lakeview at Gwinnett v. Simon Prop. Grp.*, 283 Ga. 426, 429 (2008)). The heart of this affirmative defense is that the mistake must be mutual. Because the Defendant's affirmative defense asserts that only it was mistaken about the terms of the contract, the Court grants judgment on the pleadings as to the tenth affirmative defense.

### C. Leave to Amend

As mentioned previously, a decision to grant Judgment on the Pleadings carries finality. *See* 5C Wright & Miller's Federal Practice & Procedure § 1369 (3d ed. 2026). In other words, the affirmative defenses for which this Court has granted judgment on the pleadings cannot be raised again in the same style as they were raised before. Nonetheless, Federal Rule of Civil Procedure 15(a) governs amendments to answers. *See* Fed. R. Civ. P. 15(a). Relevant here is the provision that states: "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Another court within the Eleventh Circuit explains the standard succinctly:

> The Eleventh Circuit has explained that such leave should be "freely given," as required by the rule, except in the presence of countervailing factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."

*Bartronics, Inc. v. Power-One, Inc.*, 245 F.R.D. 532, 534 (S.D. Ala. 2007) (quoting *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999), then citing *Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004)).

Thus, the Court considers any potential countervailing factors. Two are at play here. First, a scheduling order has been entered by this Court and discovery has been ongoing for more than four months. (*See generally* May 1, 2026 Scheduling Order [Doc. 33]). If the Court were to grant leave to amend the Amended Answer without limitation, it could potentially alter the scope of discovery, especially if the Defendant decides to add counterclaims to its Amended Answer. This is a real possibility as the Court has held that some of the affirmative defenses asserted by the Defendant are not properly raised as affirmative defenses and should instead be brought as counterclaims. And if the scope of discovery is altered, the Court's Scheduling Order will need to be as well. In that case, the Defendant would also have to show that "good cause" exists to modify the Scheduling Order. *See* Fed. R. Civ. P. 16(b)(4) ("***Modifying a Schedule.*** A schedule may be modified only for good cause and with the judge's consent.").

Second, the Defendant's request for leave to amend is untimely under the Local Rules of the Northern District of Georgia and the Scheduling Order. The Local Rules provide that any motion for leave to amend a pleading must be filed within thirty days after the beginning of discovery unless the filing party has obtained the necessary permission to file such a motion later. LR

7.1(A)(2), N.D.Ga. The Court's Scheduling Order does not modify this deadline. Apart from its response brief, the Defendant has filed no formal motion to for leave to file a Second Amended Answer. Thus, such a motion would be considered untimely and would be properly denied if the Court chose to do so. The presence of both factors counsels the Court against permitting the Defendant leave to amend its Amended Answer without limitation.

This result was not unavoidable. After the Plaintiffs filed their Motion for Partial Judgment on the Pleadings, either party could have moved to stay the discovery deadlines found in the Scheduling Order while the Court considered briefing on the matter under Federal Rules of Civil Procedure 16(b)(4) and 6(b)(1). In fact, the parties did exactly that and relied on Federal Rule of Civil Procedure 6(b)(1) in their Joint Motion to Stay Pre-Trial Deadlines while the Court considered the Defendant's earlier Motion to Dismiss. (*See generally* Joint Motion to Stay Pre-Trial Deadlines [Doc. 20]; *see also* Order Granting Motion to Stay Pre-Trial Deadlines [Doc. 21]). Such a motion would not have been untimely as the Plaintiffs only filed their Motion for Partial Judgment on the Pleadings four days after the entry of the Scheduling Order. Alternatively, the Defendant could have filed a formal motion for leave to amend its Amended Answer within the deadline imposed by the Local Rules. Curiously, the Defendant did not take either option to avoid this result.

That being said, the Court will grant leave to amend in a limited fashion. While the Court will not permit the Defendant to add the failed affirmative defenses as counterclaims or add any wholly new affirmative defenses to its Answer, the Court will permit the Defendant to amend its Amended Answer to add its unilateral mistake of fact affirmative defense in the place of the previous mutual mistake of fact affirmative defense asserted. Although counsel for the Defendant should have been more careful in drafting its Amended Answer, there is no reason to punish the Defendant for clerical errors in its counsel's work product, especially where the Plaintiffs were reasonably on notice of the true defense asserted by the Defendant. Adding this defense to the Amended Answer is not likely to substantially alter the scope of discovery or the positions of either party. Thus, the Court grants this limited leave to amend the Amended Answer.

## IV. Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Partial Judgment on the Pleadings [Doc. 34] is GRANTED in part and DENIED in part. The Defendant may file a Second Amended Answer within fourteen (14) days from the date of this Order that complies with the directive provided herein.

SO ORDERED, this 17th day of September, 2026.

THOMAS W. THRASH, JR.
United States District Judge